UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------X
                                                       :

CLOVER A. PEREZ,                             :
                                                       :

                                Movant,     :
                                                         :

                - against -         :
                                                         :

UNITED STATES OF AMERICA,          :
                                                         :

                                 Respondent. :
                                                           :
---------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _5/1/2017_

14-CV-3995 (VSB)
09-CR-1153 (MEA)

**MEMORANDUM & OPINION**

Appearances:

Samuel M. Braverman
Fasulo Braverman & Di Maggio, LLP
Bronx, New York
*Counsel for Movant*

Niketh Varadaraj Velamoor
Assistant United States Attorney
Southern District of New York
New York, New York
*Counsel for Respondent*

VERNON S. BRODERICK, United States District Judge:

       Before me is the motion of Clover A. Perez, pursuant to 28 U.S.C. § 2255, to vacate, set

aside, or correct her sentence on the basis that she was denied the effective assistance of counsel

before trial, at trial, and during sentencing. Because the record conclusively establishes that

Plaintiff's Sixth Amendment rights were not violated, the motion is denied.

### I.    Background and Procedural History

       Perez was initially charged by criminal complaint filed on November 2, 2009 with one

count of knowingly making false statements in an application for legal permanent residency, and

one count of failing to disclose her preparation of a false application for immigration benefits.

(*See* Doc. 1.)[1]  On December 3, 2009, a grand jury returned a three count indictment charging

Perez with mail fraud in violation of 18 U.S.C. § 1341, knowingly making false statements in an

application for legal permanent residency in violation of 18 U.S.C. § 1546(a), and "failing to

disclose her role in preparing baseless applications for lawful United States resident status, in

violation of Title 8, United States Code, Section 1324c(e)(1)."  (*See* Doc. 7 at 6.)  A superseding

indictment was returned on April 15, 2010, and added two charges against Perez:  bank fraud in

violation of 18 U.S.C. § 1344 and aggravated identity theft in violation of 18 U.S.C. § 1028A.

(*See* Doc. 14.)  At that point, Perez was represented by retained counsel Bernard Udell.  (*See*

Dkt. Entry Nov. 5, 2009.)  At the Government's request, (*see* Doc. 23), a *Curcio* hearing was

held before the Honorable Richard M. Berman in October 2010, (*see* Dkt. Entry Oct. 19, 2010),

after which Udell was relieved and Perez retained Xavier R. Donaldson as defense counsel.  (*See*

Doc. 26.)

　　　　The case proceeded to jury trial before the Honorable Marvin E. Aspen in April 2011.[2]

The evidence presented at trial proved that Perez owned and operated Reliable Immigration

Services ("Reliable").  (*See* Gov't Opp. 1.)[3]  Perez would tell clients of Reliable that they were

eligible for lawful permanent resident status regardless of their actual eligibility.  (*See id.* 2.)

With the assistance of an employee, Sophia McIntosh, Perez filed fraudulent applications for

permanent residency on clients' behalf, without their knowledge, sometimes forging their

signatures, while charging clients up-front and monthly fees.  (*See id.* 2–3.)  Perez also used the

name and identifying information of Eugenia Scott, a client, without Scott's permission, to

---

[1] For convenience, unless otherwise noted, all citations to the docket are to the docket in Case No. 09-CR-1153, which includes documents from the underlying criminal case as well as those pertaining to Perez's § 2255 motion.

[2] Judge Aspen was visiting from the Northern District of Illinois.

[3] "Gov't Opp." refers to the Memorandum of Law of the United States of America in Opposition to Clover A. Perez's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Her Sentence.  (Doc. 77.)

obtain credit cards and loans, which Perez used for personal expenses. (*See id.* 5.)

Among the witnesses at trial were three victims who testified that Perez, without their knowledge, falsified information about them and forged their signatures in applications for legal permanent residency under an amnesty program for which they were ineligible. (Trial Tr. 182–242, 248–316, 518–68.)[4] This amnesty program was the so-called "LULAC program," which was the result of the settlement of a class action brought by the League of Latin American Citizens and was open only to class members who had entered the United States before January 1, 1982. (*Id.* 36–37.) The three victims for whom Perez prepared fraudulent LULAC applications had all entered the United States in the late 1980s or 1990s and were plainly ineligible for such relief. (*Id.* 183, 248, 519.) Each victim paid Perez several thousand dollars to prepare these futile applications. (*Id.* 188–90, 288, 531.) McIntosh also testified as a cooperating witness about her own role in preparing fraudulent applications on Perez's behalf. (*Id.* 317–447.) Scott testified that Perez prepared a false application on her behalf and opened bank accounts in her name without authorization. (*Id.* 447–511.)

The sole defense witness was a Government agent who was called briefly to impeach McIntosh's testimony. (*Id.* 584–88.) The defense's general theme was to attack the credibility of the Government's witnesses. Defense counsel argued that the purported victims provided the false information contained in their applications, that McIntosh bore responsibility for any forged signatures, and that Scott had consented to Perez's use of her name to obtain credit. (*See id.* 621–52.) On April 25, 2011, the jury convicted Perez on all five counts of the superseding indictment. (Dkt. Entry Apr. 25, 2011.)

On January 27, 2012, Judge Aspen sentenced Perez to 121 months' imprisonment

---

[4] "Trial Tr." refers to the transcript of jury trial, not filed on ECF.

followed by five years of supervised release and ordered that she pay $541,191 in restitution. (Doc. 66.)  Perez timely appealed, arguing that the jury was improperly instructed and that Judge Aspen erred in applying certain sentencing enhancements, calculating the amount of loss, and ordering restitution.  On May 28, 2013, the Second Circuit affirmed the conviction and sentence in all respects in a summary order.  (*See* Doc. 72.)  Perez is presently serving her sentence and has an estimated release date of February 5, 2020.  (Gov't Opp. 12 n.5.)

On May 28, 2014, Perez filed a pro se motion to vacate her sentence pursuant to 28 U.S.C. § 2255.  (Doc. 73.)  In her motion, Perez asserts that Donaldson provided ineffective representation on various grounds, including by:  (1) failing to investigate or challenge Perez's competency to stand trial or her inability to appreciate her a plea offer; (2) failing to pursue a plea agreement; (3) preventing Perez from testifying; (4) failing to call additional Reliable clients as defense witnesses or present certain documentary evidence purportedly favorable to Perez; (5) failing to request a *Fatico* hearing to establish the amount of loss at sentencing; and (6) failing to argue for a sentencing variance based upon Perez's allegedly diminished competency and mental state.  (*See id.*)  By Order filed on June 12, 2014, I directed the Government to respond to Perez's motion, (*see* Doc. 74), and it did so on September 15, 2014, (*see* Doc. 77).  I then ordered Perez to sign a waiver of the attorney-client privilege so that Donaldson could provide an affidavit in response to Perez's allegations of ineffective assistance of counsel.  (*See* No. 14-CV-3995, Doc. 8.)  Perez timely provided a waiver on October 20, 2014, (No. 14-CV-3995, Doc. 11), and Donaldson thereafter submitted a sworn affidavit responding to Perez's allegations, (Doc. 81-1).  After I denied Perez's request for court-appointed counsel, (No. 14-CV-3995, Doc. 12), Perez retained counsel and ultimately filed a reply memorandum of law along with seventeen new evidentiary exhibits, including affidavits from Perez, her mother, and her son,

(No. 14-CV-3995, Doc. 17).

## II. <u>Legal Standard</u>

### A. *28 U.S.C. § 2255 Proceedings and Evidentiary Hearings*

28 U.S.C. § 2255 authorizes any prisoner in custody under sentence of a federal court

"claiming the right to be released upon the ground that the sentence was imposed in violation of

the Constitution or laws of the United States . . . [to] move the court which imposed the sentence

to vacate, set aside or correct the sentence."  28 U.S.C. § 2255(a).  Unless the motion, case files,

and record "conclusively show that the prisoner is entitled to no relief," I must "grant a prompt

hearing" and make findings of fact and reach conclusions of law regarding the issues raised in

the motion.  *Id.* § 2255(b).  "To warrant a hearing, the motion must set forth specific facts

supported by competent evidence, raising detailed and controverted issues of fact that, if proved

at a hearing, would entitle [the movant] to relief."  *Gonzalez v. United States*, 722 F.3d 118, 131

(2d Cir. 2013).  Where the asserted basis for relief is ineffective assistance of counsel, a hearing

is required "in cases where the petitioner has made a 'plausible claim.'"  *Morales v. United*

*States*, 635 F.3d 39, 45 (2d Cir. 2011) (internal quotation marks omitted).  The movant's

assertions in support of the motion need not be assumed credible if they are contradicted by the

record.  *See Puglisi v. United States*, 586 F.3d 209, 214 (2d Cir. 2009).

The statute does not require that the "movant must always be allowed to appear in a

district court for a full hearing if the record does not conclusively and expressly belie his claim,

no matter how vague, conclusory, or palpably incredible his allegations may be."  *Machibroda v.*

*United States*, 368 U.S. 487, 495 (1962).  Therefore, if a § 2255 motion is "not so clearly bereft

of merit as to be subject to dismissal on its face," I retain the discretion to supplement the factual

record as necessary through an appropriate procedure, whether by a full-fledged evidentiary

hearing with live testimony or through limited written submissions.  *Chang v. United States*, 250 F.3d 79, 85 (2d Cir. 2001).  A testimonial hearing is not necessary when it would not succeed in proving additional material facts.  *See Fermin v. United States*, 859 F. Supp. 2d 590, 602 (S.D.N.Y. 2012).  Where the movant alleges ineffective assistance of counsel, the submission of a responsive affidavit from trial counsel may suffice to satisfy the hearing requirement of § 2255(b) if the presentation of additional evidence "would not offer any reasonable chance of altering [the court's] view of the facts."  *Chang*, 250 F.3d at 86.

### B.    *Ineffective Assistance of Counsel*

"A defendant in criminal proceedings has a right under the Sixth Amendment to effective assistance from his attorney at all critical stages in the proceedings, which include entry of a plea of guilty and sentencing."  *Gonzalez*, 722 F.3d at 130 (citations omitted).  "The question of ineffective assistance is determined by a two-part test.  A defendant must demonstrate '(1) that counsel's performance was so unreasonable under prevailing professional norms that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment; and (2) that counsel's ineffectiveness prejudiced the defendant such that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"  *United States v. Habbas*, 527 F.3d 266, 273 (2d Cir. 2008) (quoting *United States v. Gaskin*, 364 F.3d 438, 468 (2d Cir. 2004)).

With respect to the first prong—deficient performance—the inquiry is "highly deferential" and requires that "every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  *Strickland v. Washington*, 466 U.S. 688, 699 (1984).  The petitioner seeking relief must overcome the "strong presumption" that counsel's

performance fell "within the wide range of reasonable professional assistance," i.e., that counsel's conduct reflected reasonable strategic choices. *Id.*

With regard to the second prong—prejudice—a reasonable probability of a different outcome means a "probability sufficient to undermine confidence in the outcome." *Id.* at 694. If the ineffective claim is made after a trial, a court should consider the totality of the evidence presented at trial. *See id.* at 695. "With respect to a claim of ineffective assistance in sentencing, the defendant must show a reasonable probability that, but for counsel's substandard performance, he would have received a less severe sentence." *Gonzalez*, 722 F.3d at 130. Second Circuit precedent generally "requires some objective evidence other than defendant's assertions to establish prejudice." *Pham v. United States*, 317 F.3d 178, 182 (2d Cir. 2003).

### III.    <u>Discussion</u>

#### A.    *Competency*

For a defendant to be considered competent to stand trial, the defendant must have "(1) 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and (2) 'a rational as well as factual understanding of the proceedings against him.'" *United States v. Morrison*, 153 F.3d 34, 46 (2d Cir. 1998) (quoting *United States v. Nichols*, 56 F.3d 403, 411 (2d Cir. 1995)). The trial court is required to grant a hearing on the defendant's competency if there "is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241(a). "[T]he question of competency and reasonable cause to doubt it must focus upon the defendant's abilities *at the time of trial*, not any conduct discovered or analyzed after the fact." *United States v. Gabb*, 80 F. App'x 142, 145 (2d

Cir. 2003) (summary order).  The touchstone of an inquiry into a claim of mental incompetence is "an inability to assist in the preparation of a defense or rationally to comprehend the nature of the proceedings," and "failure by trial counsel to indicate the presence of such difficulties provides substantial evidence of the defendant's competence."  *United States v. Vamos*, 797 F.2d 1146, 1150 (2d Cir. 1986).  Further, "[i]t is well-established that some degree of mental illness," including depression, "cannot be equated with incompetence to stand trial."  *Id.* at 1151; *accord Nichols*, 56 F.3d at 412; *Gluzman v. United States*, 124 F. Supp. 2d 171, 175 (S.D.N.Y. 2000).

To establish that she was prejudiced by counsel's failure to investigate her competency or to move for a competency hearing, Perez must show that there is a reasonable probability that she would have been found incompetent to stand trial if counsel had pursued the issue.  *See Strickland*, 466 U.S. at 694; *Gluzman*, 124 F. Supp. 2d at 175–76.  The record before me conclusively establishes that there was no reasonable probability that the trial court would have found that Perez lacked either the ability to consult meaningfully with her lawyer or a rational and factual understanding of the proceedings against her.  Even if counsel was ineffective in not investigating Perez's competence and/or not requesting a competency hearing, Perez cannot establish that she suffered any prejudice.

Perez claims that she suffered from depression as a result of the shooting death of one of her sons, Andre Scott, Jr., during a robbery in 2008.  (Mot. Attachment D.)[5]  She also states that her grandmother, who raised her, died approximately a month before the beginning of trial.  (*Id.*)  As purported proof of her incompetency, Perez points to her own remarks at the sentencing hearing, in which she apologized for "wasting the court's time in allowing this case to go to trial"

---

[5] "Mot." refers to the Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody.  (Doc. 73.)

as a result of the "severe depression" she had been experiencing as a result of Andre's death. (Mot. Attachment B.) In support of her reply memorandum, in her affidavit, Perez further claims that, while on pre-trial release, she was "so 'non-functioning' that she had to be accompanied nearly everywhere by close friends and family members, even to the attorney/client meetings with Donaldson," because she was taking medication that prevented her from driving and needed the assistance of a note-taker to understand the content of the meetings. (Perez Aff. ¶ 6.)[6] Perez also states that she engaged in self-harm by cutting herself for approximately one year during an unspecified period of time. (*Id.* ¶ 6a.) Perez's son also claims in an affidavit that after Andre's death, Perez became withdrawn, experienced feelings of paranoia, and engaged in self-mutilation. (No. 14-CV-3995, Doc. 17 Ex. B.) Perez's mother similarly avers in an affidavit that "right after Andre's death [Perez] would use a knife to pierce her skin deeply so she could identify with the pain she thought Andre felt from the bullet that ended his life." (*Id.* Ex. C.) Perez's mother also states that, in the period leading up to her trial, Perez was an emotionally devastated "shell just waiting to be 'punished' so she could identify with her son's 'pain.'" (*Id.*) Perez further provided three pages of counseling records from the Metropolitan Detention Center, which state that Perez participated in grief counseling after being remanded into custody and while awaiting sentencing, and which document the psychologist's opinion that Perez had "much unresolved grief" regarding Andre's death. (*Id.* Ex. S.) The records also reflect that Perez was tearful and depressed upon receiving a longer than expected sentence in January 2012. (*Id.*)

As an initial matter, Perez's self-serving assertions of incompetence warrant skepticism. *See Puglisi*, 586 F.3d at 214 (movant's credibility need not be presumed where contradicted by

---

[6] "Perez Aff." refers to the Affidavit of Clover A. Perez. (No. 14-CV-3995, Doc. 17 Ex. A.)

the record); *Brown v. United States*, Nos. 03 CV 3909(RJD), 03 CV 4371(RJD), 2010 WL 2594640, at *11 (E.D.N.Y. June 23, 2010) (same). Perez's initial motion asserted a laundry list of claims and included fourteen type-written pages of material, yet did not include any mention of self-harm or a need for assistance by family members during meetings with counsel. (*See generally* Mot.) Furthermore, although Perez attempts to use her statement at sentencing that she could not remember what happened at trial as evidence of incompetence, (*see* Mot. Attachment B), the record belies the veracity of this contention. Indeed, Perez now has a clear memory of the trial and the events preceding the trial, including that she had five meetings with Donaldson, (Perez Aff. ¶ 4), that she allegedly presented Donaldson with files evidently pertaining to mortgage fraud by a third party in an effort to cooperate with the Government, (*id.*), and that Donaldson allegedly told her not to testify because she was too "emotional," (Mot. Attachment C). Perez's allegations of incompetence are also undercut by her claim that counsel wrongly prevented her from testifying. If Perez believes she should have *testified* at trial, then surely she must also believe that she understood what was happening at trial well enough to testify in a manner that would have helped her cause. In short, Perez's claim that she should have testified is not entirely compatible with her proffered reasons as to why she was not competent.

However, even if all of the evidence Perez presents is fully credited and accepted as true, the trial record conclusively establishes that Perez's emotional problems and purported mental illness did not prevent her from consulting with counsel to a reasonable degree of rational understanding or from having a rational and factual understanding of the proceedings against her. *See Morrison*, 153 F.3d at 46. Perez's profound grief at the tragic death of her son is entirely understandable, but it does not equate to incompetence to stand trial. Depression, suicidal ideation, or even a suicide attempt, by themselves, do not constitute incompetence. *See United*

*States v. Ioulevitch*, 508 F. App'x 73, 75 (2d Cir. 2013) (summary order); *United States v. Pope*, 146 F. App'x 536, 539 (2d Cir. 2005) (summary order); *Vamos*, 797 F.2d at 1150–51; *Quail v. Farrell*, 550 F. Supp. 2d 470, 478–79 (S.D.N.Y. 2008). Rather, as the cases cited make clear, a defendant is incompetent to stand trial only if depression (or another mental condition) impairs her cognitive functioning to the point that she is unable to consult with her lawyer or understand the proceedings.

As an initial matter, during the trial, Donaldson never expressed any difficulty communicating with Perez or indicated that she did not understand what was going on during the proceedings. *Vamos*, 797 F.2d at 1150. In addition, the record amply establishes that Perez played an active role in her defense and understood the nature of the proceedings. For instance, Perez states that, shortly before trial, she encouraged Donaldson to negotiate a cooperation agreement on the basis of certain "mortgage files Perez had on" a third party. (Perez Aff. ¶ 4.) Although this effort did not succeed, it reflects Perez's participation in her own defense such that she understood the concept of cooperation and her ability to develop rational strategies in an effort to minimize her criminal exposure. *See, e.g.*, *United States v. Wolfson*, 616 F. Supp. 2d 398, 417 (S.D.N.Y. 2008) (participation in strategic decision to attempt to cooperate was evidence of defendant's competency). Furthermore, Perez also states that before or during trial, she encouraged Donaldson to present evidence of a purported contract between Perez and Scott, which, according to Perez, would have established that Scott consented to Perez's use of her personal information. (*See* Perez Aff. ¶¶ 7-7c.) By doing so, Perez attempted to provide counsel with reasonable assistance and demonstrated her understanding of the fact that she had been charged with stealing Scott's identity and misusing it for personal gain. Similarly, during the final charge conference, Perez sought an opportunity to address the court to discuss Judge

Aspen's ruling on a pretrial motion *in limine* that prevented Perez from introducing so-called "good acts" evidence to establish that she had not defrauded certain of her clients. (*See* Trial Tr. 594–95.) As counsel explained, Perez disagreed with that ruling and apparently had some difficulty accepting counsel's explanation for it. (*See id.* at 595:8–13 ("I explained that to my client. She wanted to address the court. I told her that was the Court's order. . . . She wanted to hear the court say that.").) Perez's awareness of the court's pretrial ruling on a legal matter, her substantive disagreement with it, and her dialogue with counsel on the issue all demonstrate her understanding of the proceedings at the time and her ability to contribute to her own defense in a rational manner. *Cf. United States v. Garcia*, 282 F. App'x 14, 17–18 (2d Cir. 2008) (summary order) (affirming finding of competency although defendant's ability to comprehend disputed legal issues was limited).

For these reasons, Perez cannot have suffered any prejudice from counsel's failure to investigate her competency to stand trial or move for a competency hearing. Perez has failed to set forth a plausible claim of ineffective assistance of counsel on this basis, and no further proceedings are required to conclude that she is not entitled to relief. *See, e.g.*, *Chang*, 250 F.3d at 85; *Fermin*, 859 F. Supp. 2d at 602.

## B. *Plea*

The Sixth Amendment right to the effective assistance of counsel extends to deciding whether to plead guilty. *See Padilla v. Kentucky*, 559 U.S. 356, 364 (2010). Counsel performs deficiently if he fails to communicate to his client "formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused," *Missouri v. Frye*, 566 U.S. 133, 145 (2012), or if he provides incompetent advice to his client about whether to accept or reject a plea offer, *see Lafler v. Cooper*, 566 U.S. 156, 163 (2012). To establish prejudice, the

defendant must prove that "the outcome of the plea process would have been different with competent advice" or with adequate communication. *Id.* at 163. Where the defendant has been convicted after trial and alleges ineffective assistance in connection with her non-acceptance of a plea, she must establish that "but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Id.* at 164. Thus, to establish deficient performance and prejudice with regard to an unaccepted plea on a § 2255 motion, Perez must provide credible, objective evidence showing that counsel failed to provide competent advice and that, but for counsel's failure, there is a reasonable probability that she would have pleaded guilty and received a lesser sentence. *See Pham*, 317 F.3d at 194; *United States v. Gordon*, 156 F.3d 376, 380–81 (2d Cir. 1998).

Here, Perez does not assert that Donaldson failed to communicate a plea offer or that he failed to provide competent advice about a plea offer, but rather states that he failed to pursue a plea at all. Perez alleges in her motion that Donaldson "never consulted [her] as to a possible plea and . . . never advised [her] as to the effects of entering a plea and demonstrating Acceptance of Responsibility." (Mot. Attachment B.) Perez also alleges that Donaldson "never spoke to [the] government regarding a plea agreement and, if he did so, he never discussed the terms with Movant." (Mot. Attachment C.) In response, Donaldson avers that, after replacing Bernard Udell as counsel, he "reviewed the extensive documentary and other evidence provided by the Government and . . . discussed with [Perez], at length, her options in the case."

13

(Donaldson Aff. ¶ 4.)[7]  Donaldson also states that he "suggested that [Perez] consider pleading guilty pursuant to an agreement with the Government" in "several discussions" with her, during which Donaldson "advised Ms. Perez about the benefits of pleading guilty including, among other things, the benefits under the Sentencing Guidelines for acceptance of responsibility."  (*Id.*) Donaldson explains that Perez "made it clear to me that she understood" these points, but "remained adamant about her innocence and her intention to go trial" and did not authorize Donaldson to discuss the terms of a guilty plea with the Government.  (*Id.* ¶ 5.)  In her reply, Perez claims that she had asked Donaldson to negotiate with the Government on the basis of certain "mortgage files" Perez "had on" a third party.  (Perez Aff. ¶ 4.)  In support of this assertion, Perez points to post-conviction emails she sent to Donaldson requesting her case files, in which she refers to the mortgage files "which you said you spoke to the prosecutor about and they were not interested."  (No. 14-CV-3995, Doc. 17-5; *see also* Docs. 17-6, 17-7, 17-8.)  Perez also asserts that she sent Donaldson a text message in which she said "Please work out a deal, I'm scared to go to trial," and Donaldson replied, "You have no choice, you must go to trial." (Perez Aff. ¶ 8.)

Perez has failed to provide credible, objective evidence of deficient performance.  *See Pham*, 317 F.3d at 194.  Perez does not provide any substantive testimony that counsel failed to advise her of the benefits of pleading guilty.  To the contrary, after having claimed in her motion that she was never told the benefits of pleading guilty, (*see* Mot. Attachment B), Perez asserts in her affidavit that she actually wanted to plead guilty but was denied the opportunity to do so, thus implying that she understood the benefits of a plea, (*see* Perez Aff. ¶¶ 4, 5, 5a, 8). Donaldson credibly explains in his affidavit that he advised Perez of the benefits of a plea,

---

[7] "Donaldson Aff." refers to the Affidavit of Xavier R. Donaldson, Esq.  (Doc. 81-1.)

including a reduction in offense level for acceptance of responsibility, on numerous occasions. (*See* Donaldson Aff. ¶ 4.) Perez's assertion that counsel denied her the ability to plead guilty or refused to negotiate a plea is similarly unsupported by credible evidence. As an initial matter, Perez's assertion that she texted her lawyer, "Please work out a deal," and he replied, "You have no choice, you must go to trial," is wholly implausible on its face. (*See* Perez Aff. ¶ 8.) Perez did not raise the issue in her direct appeal or mention it in her voluminous initial submission. Furthermore, the Government's lack of interest in Perez's attempt to cooperate against a third party with mortgage documents of some kind is not inconsistent with Donaldson's statement that Perez did not authorize him to discuss the terms of a plea.[8] Once the Government made clear that it had no interest in Perez's cooperation about the mortgage documents she "had on" a third party, Perez could have attempted to negotiate a plea agreement without cooperation. Donaldson, however, specifically states that Perez "remained adamant about her innocence and her intention to go to trial," and never authorized him to negotiate a plea agreement. (Donaldson Aff. ¶ 5.) For these reasons, Perez has not provided any credible evidence that counsel failed to competently advise her in connection with a possible plea. *See Lafler*, 566 U.S. at 163; *Pham*, 317 F.3d at 194.

Even if counsel gave advice that was unreasonable under prevailing professional norms, the record establishes that Perez was committed to going to trial and therefore suffered no prejudice from any deficient performance. *See Lafler*, 566 U.S. at 163. In Perez's own remarks at sentencing, she apologized for "wasting the court's time in allowing this case to go to trial." (Mot. Attachment B.) Perez also apologized for her conduct toward the Government at the

---

[8] Neither Donaldson nor the Government directly addressed the mortgage document issue because Perez raised it for the first time on reply.

reverse proffer, the details of which are outside the record but at which it can reasonably be inferred that Perez asserted her innocence. (*See id.*; Gov't Opp. 27.) Furthermore, Donaldson claims that Perez was "adamant" about her desire to go to trial. (Donaldson Aff. ¶ 5.) Other than Perez's belated assertions that she desired to plead guilty, there is no credible evidence that there is a reasonable probability Perez would have accepted a plea. *See Pham*, 317 F.3d at 194. For these reasons, Perez has not established that she was denied the effective assistance of counsel on the basis of counsel's alleged failure to negotiate a plea agreement.

C.    *Perez's Testimony*

In her motion, Perez asserts that Donaldson did not permit her to testify because she was too "emotional" to do so. (*See* Mot. Attachments A, C.) Perez provides no additional detail on this point in her affidavit. (*See* Perez Aff.) This statement does not suffice to set forth a plausible claim of ineffective assistance of counsel. *See Dominguez-Gabriel v. United States*, No. 09-CR-157 RPP, 2014 WL 4159981, at *6 (S.D.N.Y. Aug. 21, 2014) ("In the case of an ineffective assistance claim based on trial counsel's alleged failure to allow a defendant to testify, courts have recognized that a self-serving affidavit, alleging such a failure, is insufficient to establish that counsel was ineffective."); *see also United States v. Castillo*, 14 F.3d 802, 804–05 (2d Cir. 1994) (given that defendant had been advised in open court regarding his right to testify, even accepting as true that he informed counsel that he wished to testify and counsel refused to call him to the stand, defendant's affidavit was insufficient).

Counsel was permitted—indeed, encouraged—to offer candid strategic advice to his client about whether it was advisable to take the stand. In an on-the-record colloquy with Judge Aspen, Perez confirmed that she was aware that she had the right to testify if she wanted to do so. (*See* Trial Tr. 594:5-16.) Therefore, Perez has failed to offer any evidence that Donaldson

performed deficiently in this regard. Furthermore, Perez has not described what she would have said if she had testified and has provided no reason to believe that her testimony would have had a reasonable probability of affecting the outcome of the proceedings. *See Brown v. Artuz*, 124 F.3d 73, 81 (2d Cir. 1997) (finding, notwithstanding Brown's statement that he would have testified to certain facts had he taken the stand, that there was "no reasonable probability that the verdict would have been different"). For these reasons, Perez has not set forth a plausible claim of ineffective assistance of counsel on the basis that counsel allegedly prevented her from testifying.

### D. *Additional Witnesses and Evidence*

The Government presented testimony at trial from only a handful of Perez's dozens of victims. Perez argues that counsel was ineffective in failing to call as witnesses other persons identified as victims of Perez's fraud, who, in Perez's view, had either exaggerated their losses or were not victims at all. (*See* Mot. Attachment A.) Perez identifies only one specific witness whom she believes Donaldson should have called: Sharon Richards, a client and the cousin of a victim. (*See* Perez Aff. ¶ 8.) Perez asserts that Richards was allegedly in possession of the original version of a document that the Government incorrectly introduced at trial as forged. (*See id.*) Perez does not identify any other witnesses who should have been called to testify on her behalf or explain what testimony these witnesses could have provided. She also asserts that counsel should have sought to introduce evidence of the alleged contract between Perez and Scott, which purportedly would have established that Scott consented to Perez's use of credit cards in Scott's name to purchase a car, among other things. (*See* Reply Ex. L; Perez Aff. ¶¶ 7-7c.)

Donaldson explains the reasons for the choices he made during the trial. With regard to

witnesses, Donaldson states that he did not think it would have been wise to call additional victims of the fraud as witnesses for Perez, and that he interviewed one client and found her testimony unhelpful.[9]  (Donaldson Aff. ¶ 8.)  With regard to the contract, Donaldson stated that he doubted its authenticity and declined to offer it as evidence on both strategic and ethical grounds when a handwriting expert could not verify the authenticity of Scott's signature.  (*See id.* ¶¶ 7–8.)

Plaintiff's vague and unsupported assertions that unnamed witnesses would have provided unspecified helpful testimony are wholly insufficient to make out a *prima facie* case that counsel performed deficiently in failing to call these witnesses.  *See, e.g.*, *Chang*, 250 F.3d at 85.  In any event, counsel offered a reasoned strategic rationale for the decision not to call these witnesses, as he believed the testimony of one would have been unhelpful and the testimony of satisfied clients had been precluded by the court.  *See Ryan v. Rivera*, 21 F. App'x 33, 34 (2d Cir. 2001) (summary order) ("[W]hen a party challenges matters of trial strategy, such as the decision not to call a witness, even greater deference is generally warranted."); *United States v. Luciano*, 158 F.3d 655, 660 (2d Cir. 1998) ("The decision not to call a particular witness is typically a question of trial strategy that appellate courts are ill-suited to second-guess."); *Krutikov v. United States*, 324 F. Supp. 2d 369, 371 (E.D.N.Y. 2004) ("The decision not to call a witness is strategic, and it is rarely, if ever, the proper basis of an ineffective assistance of counsel claim.").  With respect to Richards in particular, Donaldson's strategic decision that her testimony would not have been helpful was reasonable, as counsel could have found Richards not credible, calculated that the risk of her testimony outweighed its benefit, or simply found that Richards's actual testimony differed from Perez's characterization of it.  *See*

---

[9] Perez states that Richards is the client whom Donaldson interviewed.  (Perez Aff. ¶ 8.)

*Pena-Martinez v. Duncan*, 112 F. App'x 113, 115 (2d Cir. 2004) (summary order) (concluding that counsel did not perform deficiently in declining to call a witness based upon counsel's affidavit explaining that he interviewed a witness and determined, contrary to client's representations, that she would not provide helpful testimony).  "In this case, there is no evidence in the record to suggest that counsel's decision[] not to call [Richards was] anything other than [a] strategic choice[] made after thorough investigation."  *Ortiz v. Barkley*, 558 F. Supp. 2d 444, 453 (S.D.N.Y. 2008).  Furthermore, even if Donaldson's decision not to call Richards as a witness constituted deficient performance—which it did not—Perez has not made a showing of possible prejudice.

Finally, Donaldson's decision not to introduce into evidence a document he believed was forged, on both ethical and strategic grounds, was wholly reasonable and in conformity with prevailing professional norms.  *See* N.Y. R. Prof'l Conduct 3.3(a)(3) ("A lawyer may refuse to offer evidence, other than the testimony of a defendant in a criminal matter, that the lawyer reasonably believes is false.").  Even if I assume that Donaldson's assessment of the document was incorrect, in light of the overwhelming evidence presented at trial of Perez's sustained fraud involving numerous clients over the course of several years, including detailed testimony by a cooperating witness, there is no reasonable probability that the outcome of the proceedings would have been different if Perez had succeeded in merely demonstrating that a single document was not forged.  *See Strickland*, 466 U.S. at 694.

For these reasons, Perez was not denied the effective assistance of counsel when counsel declined to present certain evidence in her defense.

###### E.     Fatico

Perez argues that counsel was ineffective for failing to request a *Fatico* hearing to present

evidence regarding the amount of loss caused by Perez's conduct. (Mot. 9; *id.* Attachment C at 2; *id.* Attachment E at 4.) However, Donaldson requested a *Fatico* hearing when he challenged the Government's estimate of loss in his sentencing submission. (*See* Doc. 61 at 4 ("These undocumented and unreliable losses coupled with the defendant's contesting the amounts clearly call into question whether the total amount exceeds $400,000 and a hearing is requested to fully explore the reliability of these 'victims' statements of loss.").) In addition, Perez challenged Judge Aspen's calculation of the loss amount in her direct appeal and lost. *United States v. Perez*, 523 F. App'x 842, 844 (2d Cir. 2013) ("The district court's findings as to loss amount were not clearly erroneous.") Perez cannot have been denied the effective assistance of counsel on this basis.

### F.     *Variance*

Perez also argues that Donaldson was ineffective in failing to argue for a variance based upon her mental state as a result of the murder of her son Andre. (*See* Mot. 9; *id.* Attachment D; Reply 10.) This argument must be rejected.

As an initial matter, this assertion appears to be part of a larger claim that counsel failed to understand that the Sentencing Guidelines are nonbinding after *Booker v. United States*, 543 U.S. 220 (2005), and failed to identify any potential grounds for a variance. (*See* Mot. Attachment D.) This argument is contradicted by the record. The point of counsel's oral sentencing argument was to advocate for a sentence of 60 months, (*see* Sentencing Tr. 16:23-17:11),[10] which was significantly below the applicable Guideline range of 97-121 months concurrent on Counts One through Four plus twenty-four months consecutively on Count Five, (*see id.* at 10:18–23). Counsel's written sentencing submission argued for leniency under the

---

[10] "Sentencing Tr." refers to the transcript of the sentencing hearing of January 27, 2012. (Doc. 77-2.)

factors set forth in 18 U.S.C. § 3553(a) based upon Perez's personal history as an immigrant, a productive worker, a victim of domestic abuse, and a loving provider for her children and grandchildren. (*See* Doc. 61 at 6–9.) Although counsel did not expressly use the word "variance," the substance of his written and oral presentations leaves no doubt that he understood that Judge Aspen had the discretion to impose a below-Guidelines (or above-Guidelines) sentence based upon an individualized assessment of Plaintiff's culpability and personal characteristics, and Donaldson argued that Judge Aspen should exercise that discretion to sentence Perez to below the Guidelines range.

Furthermore, counsel *did* argue for sentencing leniency on the basis of Andre's murder. In his written submission, counsel explained:

> Ms. Perez was very close to Andre and tried to instill in him fatherly qualities that were absent in her own father and her own husband, Andre Scott, Sr. Andre Jr, ultimately had two (2) children of his own, Treyvon and Kayla Scott. While the birth of these two children were blessings, their mothers were absent and of course Ms. Perez[] treated them as if they were her own children. Unfortunately, her commitment to her grandchildren proved insightful as Andre was gunned down and murdered in 2008 while being robbed. Andre's death caused an irreparable hole in Ms. Perez as no mother wishes to outlive her children. After Andre's death, Ms. Perez did what she has always done when it came to family, she immediately assumed primary care responsibilities of Andre's two children: Trayvon and Kayla. Indeed, from 2008 until she was incarcerated related to this case, Ms. Perez had provided **all** care for Treyvon and Kayla. After her incarceration, Trayvon has suffered immensely and accordingly [*sic*] to Ms. Perez "rarely speaks to anyone."

(Doc. 61 at 7–8.) Counsel also discussed Perez's loss of her son in his oral presentation, albeit briefly. (*See* Sentencing Tr. 15.)

Donaldson did not expressly link Andre's murder with Perez's level of culpability. That is, counsel did not argue, as Perez apparently believes he should have, that Perez bore diminished responsibility for her criminal conduct because she was depressed and grieving as a result of her

son's murder.  However, declining to make such an argument was entirely reasonable and did

not constitute deficient performance under *Strickland*.  In general, counsel's strategic choice of

which sentencing arguments to emphasize is owed deference and may not be second-guessed in

hindsight.  *See, e.g.*, *Strickland*, 466 U.S. at 689.  Here, the argument Perez believes counsel

should have made would have stood little chance of success.  The evidence presented at trial

focused largely upon Perez's preparation of fraudulent applications for the LULAC visa

program, which only accepted applications from May 2004 through September 2005.  (*See* Trial

Tr. 36:14–37:6, 76:5-7.)  Similarly, Perez's fraudulent use of a client's stolen identity to obtain

banking credit and buy a car occurred in 2006.  (*See* Reply Exs. M-Q.)  Perez's son was

murdered in 2008.  (Doc. 61 at 7–8.)  It would have been illogical to argue that Perez's grief

diminished her culpability for criminal conduct that mainly took place while her son was alive.

Measured against an objective standard of reasonableness, counsel did not perform deficiently by

not presenting this argument.  *See, e.g.*, *United States v. Herrera*, 186 F. App'x 109, 112 (2d Cir.

2006) (summary order) (no deficient performance in not making an argument that "experienced

counsel could well have concluded . . . was hardly likely to result in a more lenient sentence");

*Rodriguez v. United States*, 663 F. Supp. 2d 220, 223 (S.D.N.Y. 2009) ("Plausibly, recognition

of the shaky factual support for the argument may have prompted a strategic decision by counsel

not to press the issue further at sentencing."); *Santiago-Diaz v. United States*, 299 F. Supp. 2d

293, 301 (S.D.N.Y. 2004) (counsel's failure to present sentencing argument of "doubtful" merit

was not deficient performance).  And, even if the argument were not unsound, it easily could

have undercut Perez's own effort to take responsibility for her actions at sentencing.  (*See*

Sentencing Tr. 35-37.)  *See Greiner v. Wells*, 417 F.3d 305, 319 (2d Cir. 2005) ("We will not

normally fault counsel for foregoing a potentially fruitful course of conduct if that choice also

entails a 'significant potential downside.'").

**IV.** **Conclusion**

For the foregoing reasons, I conclude that Perez was not deprived of her Sixth Amendment right to counsel, and the motion to vacate, set aside, or correct her sentence pursuant to 28 U.S.C. § 2255, (Doc. 73; No. 14-CV-3995, Doc. 1), is DENIED. Because there has been no substantial showing of the denial of a constitutional right, no certificate of appealability shall issue. *See Krantz v. United States*, 224 F.3d 125, 127 (2d Cir. 2000); 28 U.S.C. § 2253(c)(2). The Clerk of Court is respectfully directed to terminate the pending motion and to close Case No. 14-CV-3995.

SO ORDERED.


Dated: May 1, 2017
          New York, New York

Vernon S. Broderick
United States District Judge